IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **L&W SUPPLY CORPORATION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**DRIVEN CONSTRUCTION, INC.** and **JEFFREY S. LUNSFORD a/k/a JEFF LUNSFORD**<br><br>**Defendants.** | Case No. 2:22-cv-437 |

### *MEMORANDUM OPINION AND ORDER*

Before the Court is L&W Supply Corporation's ("L&W" or "Plaintiff") Motion for Default Judgment ("Motion" or "Motion for Default Judgment"), pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. Mot. Default J., ECF No. 12 ("Mot."). The Court **FINDS** that Plaintiff has provided sufficient evidence to support a finding of default judgment against Driven Construction, Inc. ("Driven" or "Defendant"). Accordingly, Plaintiff's Motion is **GRANTED**.

### I.     FACTS AND PROCEDURAL HISTORY

L&W Supply is a Delaware corporation that maintains its principal place of business in Chicago, Illinois and is authorized to conduct business in the Commonwealth of Virginia. Complaint ("Compl.") ¶ 1, ECF No. 1. As a building supply company, L&W furnishes building materials to contractor customers to use on various public and private commercial and residential projects. Mot. at Ex. 1 ¶ 4 (Decl. Thomas Moran). Driven is a Virginia corporation that maintains its principal place of business in Williamsburg, Virginia. Compl. ¶ 2. Defendant Jeff Lunsford is a resident of Virginia and the President of Driven. *Id.* at ¶ 3.

On July 7, 2014, Driven, as a corporate applicant, and Defendant Jeff Lunsford, as personal guarantor, executed a Credit Application and Guaranty with L&W (the "Agreement"). *Id.* at ¶ 6;

Compl. at Ex. 1 ("Credit Application"), ECF No. 1-1. Pursuant to the Agreement, L&W provided construction materials to Driven on credit and Driven agreed to "pay to L&W Supply all costs of collection, including, without limitation, reasonable attorneys' fees, paralegals' fees, court costs, arbitration fees, sheriff's fees, bond costs and lien costs, incurred by L&W Supply in collecting any money due from [Driven.]" *Id.* at ¶ 7-9; *see* Compl. at Ex. 1, ¶ 6. Under the Guaranty provisions of the Agreement, Defendant Lunsford, in his personal capacity, agreed to "absolutely, irrevocably and unconditionally guarantee[] to L&W Supply…the timely payment and performance of all liabilities and obligations of [Driven] to L&W Supply." *Id.* Driven utilized and incorporated the building materials furnished by L&W to fulfill its various contracts for construction projects, including but not limited to: (1) Bruton High School in Williamsburg, Virginia; (2) Columbia Care in Williamsburg, Virginia and Virginia Beach Virginia; (3) Target in Simpsonville, South Carolina and Garner, North Carolina; (4) Rite Aid in Williamsburg, Virginia and Chesapeake, Virginia; (5) Burlington in Virginia Beach, Virginia; and (6) Davita Dialysis in Charlotte, North Carolina (collectively, the "Projects"). *Id.* at ¶ 1.

L&W issued forty-eight (48) invoices (the "Invoices") for the materials it furnished to Driven for the various Virginia Projects. *Id.* at ¶ 10; *see id.* at Ex. 2 ("Driven Invoices"), ECF No. 1-2. Each invoice states: "All accounts past due will be subject to a monthly late payment charge, not to exceed the maximum allowable by state or federal law." *Id.* Driven breached its contractual obligations to L&W by failing to make timely and proper payments on the Invoices as required by the Credit Application Agreement and invoice terms and conditions. *Id.* at ¶ 11.; *see id.* at Ex. 3 ("Decl. of Account"), ECF No. 1-3. To date, Driven owes L&W the collective, principal balance amount of $136,207.96 for the materials used on the Projects described above, which is exclusive of service charges, attorneys' fees, costs, expenses and interest. *Id.*

On October 20, 2022, Plaintiff filed the instant Complaint, bringing a breach of contract claim against Driven and Defendant Jeff Lunsford. Compl. On November 3, 2022, Driven's registered agent,

2


Bennett L. Stein, was served with a summons and copy of the Complaint. Mot. ¶ 2; *see* Summons, ECF No. 6. On November 29, 2022, Plaintiff filed a Request for Entry of Default against Driven, *see* Req. Entry Default, ECF No. 8. The Clerk entered default against Driven on November 30, 2022. Entry Default, ECF No. 9. Driven has not appeared or made any filings in this matter.[1]

On December 28, 2022, Plaintiff filed the instant Motion for Default Judgment against Driven. *See* Mot. Plaintiff seeks to recover a total judgment amount of $152,150.22, which includes damages in the principal amount of $136,207.96, plus $9,276.59 in pre-judgment monthly service charges through December 28, 2022, $6,665.67 in attorney's fees, costs and expenses, and post-judgment interest at the rate of six percent per annum. *Id.* at ¶ 12. On February 22, 2023, the Court held a hearing on the matter—at which representatives for Driven did not appear—and conducted an inquiry of Plaintiff's counsel regarding the Motion for Default Judgment. Mot. Hr'g, ECF No. 17.

## II.   LEGAL STANDARD

### A.   Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b). The United States Court of Appeals for the Fourth Circuit has expressed "a strong preference that, as a general matter, defaults be avoided, and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Default judgment may be appropriate, however, "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

---

[1] On January 20, 2023, L&W provided notice of its dismissal of all counts of the Complaint as against Defendant Jeff Lunsford. ECF No. 13.

3

A court must "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.*, 486 F. Supp. 2d 496, 502 (E.D. Pa. 2007)). When determining whether to grant a motion for default judgment, courts may consider:

> (1) the amount of money potentially involved; (2) whether material issues of fact or issues of substantial public importance are at issue; (3) whether the default is largely technical; (4) whether plaintiff has been substantially prejudiced by the delay involved; (5) whether the grounds for default are clearly established or are in doubt; (6) how harsh an effect a default judgment might have; and (7) whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

*Id.* at 506 (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2685 (3d ed. 1998)) (internal quotations omitted).

Although a defaulting party admits the factual allegations in the filings of the opposing party, a court must evaluate the sufficiency of the allegations to determine if the party moving for default judgment states a cause of action. *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n. 3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action."); *Anderson v. Found, for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to a party where the party failed to state a valid claim).

**B.    Damages**

If a court determines that the well-pleaded allegations in the complaint support relief in the form of damages, the court must establish the damages to which the plaintiff is entitled. *See J & J Sports Prods., Inc. v. Brutt's LLC*, No. 2:14CV269, 2014 WL 7363823, at *7 (E.D. Va. Dec. 23, 2014).

4

Allegations relating to the amount of damages are not deemed admitted by default. FED. R. CIV. P. 8(b)(6). Unless the amount of damages is certain, the Court is required to make an independent determination of the sum to be awarded. In all circumstances, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c); *see also In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Thus, even if the court determines that a plaintiff has established liability, the court does not accept as true factual allegations regarding damages, but rather must make an independent determination regarding damages. *J & J Sports Productions, Inc., v. Panana, LLC*, 2014 WL 5454323, at *1 (D. Md. Oct. 24, 2014). In determining the appropriate sum, the court may rely on affidavits or documentary evidence in the record. *Id.*

## C. Attorney's Fees and Costs

The touchstone of any award of attorney fees and expenses is reasonableness. *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 769 (E.D. Va. 2013) (quoting *E.I. DuPont de Nemours and Co. v. Kolon Indus., Inc.*, No. 3:09-cv-058, 2013 WL 458532, at *2 (E.D. Va. Feb. 6, 2013)). The fee applicant bears the burden of demonstrating the reasonableness of its fee request, *Kenney v. A Touch of Patience Shared Hous., Inc.*, 779 F. Supp. 2d 516, 525 (E.D. Va. 2011), and of "providing sufficient detail in [its] records to explain and support [its] requests for fees and costs," *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645 (D. Md. 2012). Indeed, "the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley v. Eckerhart*, 461 U.S. 424, 441 (1983) (Burger, C.J., concurring).

To calculate an attorney fees award, the Court must determine a "lodestar fee." *Grissom v. Miller Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *Brodziak v. Runyon*, 43 F.3d 194, 196 (4th Cir. 1998). The Supreme Court has stated that there is a "strong presumption" that the lodestar figure represents a reasonable attorney fee award, which may be overcome only "in those rare circumstances

in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

The lodestar fee is calculated by multiplying the number of reasonable hours expended times a reasonable rate. *Id.* The Fourth Circuit has held that the twelve factors must be applied in determining the reasonable hourly rates and hours expended. *See Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986). These factors include:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to properly perform the legal service;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Id.* at 1075 n.2 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) *Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934 (1978)).

In addition, district courts "should exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94-1011, at 6 (1976)). Further, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). The Fourth Circuit has held that, "[a] fee based upon reasonable rates and hours is presumed to be fully compensatory without producing a windfall." *Daly*, 790 F.2d at 1078. Ultimately, it is within the court's discretion, upon consideration of the lodestar factors, to alter the lodestar figure in accordance with its analysis. *Lyle v. Food Lion, Inc.*, 954 F.2d 984 (4th Cir. 1992).

In determining "what constitutes a 'reasonable' number of hours and rate," the Court need not address all twelve factors independently, because "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Freeman v. Potter*, No. 7:04cv276, 2006 WL 2631722, at *2 (W.D. Va. 2006) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983)).

### III. DISCUSSION

#### A. Default Judgment

The Court finds that the well-pled allegations in the Complaint support relief for Plaintiff's breach of contract claim. Driven is liable to L&W for damages, pre-judgment interest, attorney's fees, costs, and expenses, and post-judgment interest. To succeed on a breach of contract claim at trial under Virginia[2] law, a plaintiff must establish the following elements: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *See Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009); *see also Filak v. George*, 267 Va. 612, 619 (2004). The well-pled facts in the Complaint establish that Defendant executed a valid and enforceable Credit Application Agreement with Plaintiff, failed to fulfill their obligations under the Agreement, and caused damage to Plaintiff as a result of their breach.

Furthermore, all the default judgment factors favor relief. *See EMI Apr.*, 618 F. Supp. 2d at 506. First, the amount of money involved is certainly not nominal, but it is unlikely to "shock the conscience if it were entered by default judgment," especially given that the amount requested is largely predicted by the plain text of the agreement Plaintiff entered into with Defendant. *Id.* Second, this matter is ultimately a private contractual dispute and does not appear to involve material issues of fact or issues of substantial public importance. Third, default here is a result of Defendant's complete

---

[2] State law governs contractual matters. *James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004).

abandonment of their obligations under the Agreement with Plaintiff and is not the result of a mere technically, such as missing a deadline by a few days. *Id.* at 505. Fourth, Plaintiff has been significantly prejudiced by the delay involved, having had to navigate Defendant's breach since 2022 without any relief. Fifth, the grounds for default here are clearly established by the factual and procedural history. Sixth, while the damages that would result from a default judgment in this case are significant, the effect of the judgment is not harsh considering: (1) the damages amount is largely predicted by the plain text of the Agreement Plaintiff entered into with Defendant; and (2) Plaintiff incurred significant losses as a result of Defendant's failure to fulfill its contractual obligations. Finally, there is no indication that a good-faith mistake or excusable neglect caused Defendant's default. Accordingly, Defendant is liable to Plaintiff for a total judgment amount of $152,150.22, which includes damages, plus pre-judgment interest, attorney's fees, costs, and expenses, and post-judgment interest (discussed below).

**B.    Damages**

The Court finds that Driven, as the defaulting defendant, is liable to Plaintiff for $136,207.96 in damages. *See* Compl. at Ex. 1; Mot. ¶ 8 - 10. Plaintiff's request for $136,207.96 in damages is supported by a Declaration of Account explains the costs Plaintiff incurred for the materials it furnished to Driven for which payment was never received. Compl. at Ex. 3. The Declaration includes and an invoice statement listing the goods and materials that L&W provided to Driven. *Id.* Together the Declaration of Account and invoice statement establishes that Driven failed to pay the total principal amount of $136,207.96, exclusive of interest and applicable service charges. Thus, the Court finds that Plaintiff is entitled to damages from Driven for the sum certain amount of $136,207.96.

**C.    Pre-Judgment Interest**

Plaintiff also moves for an entry of $9,276.59 in pre-judgment interest in addition to the requested $136,207.96 in damages. *See* Mot. at 3. The district court has discretion on whether to award pre-judgment interest. *Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th Cir. 1993). "District courts

must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate." *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000) (citing *McDevitt & Street Co. v. Marriott Corp.*, 754 F.Supp. 513, 515 (E.D. Va. 1991)). "Prejudgment interest is commonly denied when the back pay award is not readily determinable or when the plaintiff fails to raise the issue in a timely or an appropriate manner." *Maksymchuk*, 987 F.2d at 1077.

The Court finds it appropriate to award pre-judgment interest in this case in the total amount of $9,276.59. *See Maksymchuk*, 987 F.2d at 1077. Plaintiff clearly specified the requested damages and the calculation thereof in the Motion for Default Judgment. Mot. ¶ 11. Plaintiff's Motion summarizes the service charge amounts for Defendant's forty-eight (48) unpaid invoices. *Id.*

| Invoice Date | Invoice No. | Payment Due Date | Invoice Amount | Accrued Service Charge through 12/28/22 | Total Due |
|---|---|---|---|---|---|
| 9/8/21 | 1000491458-001 | 10/30/21 | $ 5,830.47 | $ 406.38 | $ 6,236.85 |
| 9/9/21 | 298176424 | 10/10/21 | 797.01 | 58.17 | 855.18 |
| 9/16/21 | 1000538065-001 | 10/30/21 | 229.78 | 16.02 | 245.80 |
| 9/17/21 | 298176921 | 10/10/21 | 222.44 | 16.24 | 238.68 |
| 9/27/21 | 1000599717-001 | 10/30/21 | 2,251.48 | 156.93 | 2,408.41 |
| 10/5/21 | 1000657906-001 | 11/30/21 | 4,603.53 | 297.40 | 4,900.93 |
| 10/5/21 | 1000664789-001 | 11/30/21 | 7,227.20 | 466.90 | 7,694.10 |
| 10/6/21 | 1000671838-001 | 11/30/21 | 692.97 | 44.77 | 737.74 |
| 10/6/21 | 1000671838-002 | 11/30/21 | 16.69 | 1.08 | 17.77 |
| 10/8/21 | 1000695092-001 | 11/30/21 | 66,454.78 | 4,293.16 | 70,747.94 |
| 10/12/21 | 1000714596-001 | 11/30/21 | 1,506.03 | 97.29 | 1,603.32 |
| 10/13/21 | 1000725191-001 | 11/30/21 | 756.22 | 48.85 | 805.07 |
| 10/15/21 | 1000740681-001 | 11/30/21 | 66.25 | 4.28 | 70.53 |
| 10/15/21 | 1000741461-001 | 11/30/21 | 11,062.39 | 714.66 | 11,777.05 |
| 10/18/21 | 1000740653-001 | 11/30/21 | 402.19 | 25.98 | 428.17 |
| 10/21/21 | 240310817 | 11/10/21 | 432.31 | 29.35 | 461.66 |
| 10/21/21 | 1000780714-001 | 11/30/21 | 118.45 | 7.65 | 126.10 |
| 10/22/21 | 240310952 | 11/10/21 | 201.72 | 13.69 | 215.41 |
| 10/28/21 | 1000844976-001 | 11/30/21 | 2,267.51 | 146.49 | 2,414.00 |
| 10/29/21 | 1000839771-001 | 11/30/21 | 2,327.79 | 150.38 | 2,478.17 |
| 10/29/21 | 1000844908-001 | 11/30/21 | 698.75 | 45.14 | 743.89 |
| 10/29/21 | 1000844986-001 | 11/30/21 | 67.31 | 4.35 | 71.66 |
| 10/29/21 | 1000849875-001 | 11/30/21 | 698.75 | 45.14 | 743.89 |
| 10/29/21 | 1000860890-001 | 11/30/21 | 3,085.19 | 199.31 | 3,284.50 |
| 11/4/21 | 1000911360-001 | 12/30/21 | 12,757.23 | 761.24 | 13,518.47 |
| 11/4/21 | 1000911705-001 | 12/30/21 | 440.06 | 26.26 | 466.32 |
| 11/4/21 | 1000911809-001 | 12/30/21 | 1,640.92 | 97.92 | 1,738.84 |
| 11/8/21 | 1000941389-001 | 12/30/21 | 39.48 | 2.36 | 41.84 |
| 11/9/21 | 1000952736-001 | 12/30/21 | 495.36 | 29.56 | 524.92 |
| 11/12/21 | 1000907307-001 | [Credit] | (589.11) |  | (589.11) |

| Invoice Date | Invoice No. | Payment Due Date | Invoice Amount | Accrued Service Charge through 12/28/22 | Total Due |
|---|---|---|---|---|---|
| 11/24/21 | 1001101837-001 | [Credit] | (9,215.57) | | (9,215.57) |
| 11/29/21 | 1001094599-001 | 12/30/21 | 8,795.14 | 524.82 | 9,319.96 |
| 11/30/21 | 1001105463-001 | 12/30/21 | 233.94 | 13.96 | 247.90 |
| 11/30/21 | 1001114616-001 | 12/30/21 | 593.49 | 35.41 | 628.90 |
| 11/30/21 | 1001121868-001 | 12/30/21 | 822.76 | 49.10 | 871.86 |
| 11/30/21 | 1001128951-001 | 12/30/21 | 179.78 | 10.73 | 190.51 |
| 12/2/21 | 1001148548-001 | 1/30/22 | 197.67 | 10.79 | 208.46 |
| 12/2/21 | 1001150548-001 | 1/30/22 | 219.63 | 11.99 | 231.62 |
| 12/2/21 | 1001155857-001 | 1/30/22 | 285.99 | 15.61 | 301.60 |
| 12/6/21 | 1001156608-001 | 1/30/22 | 2,211.32 | 120.68 | 2,332.00 |
| 12/7/21 | 1001188552-001 | 1/30/22 | 235.32 | 12.84 | 248.16 |
| 12/9/21 | 1001216455-001 | 1/30/22 | 166.42 | 9.08 | 175.50 |
| 12/10/21 | 1001226679-001 | 1/30/22 | 397.82 | 21.71 | 419.53 |
| 12/14/21 | 1001252673-001 | 1/30/22 | 113.21 | 6.18 | 119.39 |
| 12/15/21 | 1001263650-001 | 1/30/22 | 571.28 | 31.18 | 602.46 |
| 12/20/21 | 1001286726-001 | 1/30/22 | 3,049.74 | 166.44 | 3,216.18 |
| 12/20/21 | 1001300136-001 | 1/30/22 | 373.97 | 20.41 | 394.38 |
| 1/4/22 | 1001387797-001 | 2/28/22 | 174.90 | 8.71 | 183.61 |
| | | Totals | $136,207.96 | $9,276.59 | $145,484.55 |

The table above provides sufficient information to support Plaintiff's claim for pre-judgment interest for service charges accrued through December 28, 2022, the latest date on which Plaintiff is requesting damages for its breach of contract claim. *Id.* Accordingly, the record reflects that Defendant accrued service charges in the amount of $9,276.59 on the principal balance and the Court will adhere to that figure. *See id.* Thus, the Court finds that L&W is entitled to damages from Driven in the total amount of $145,484.55, for the $136,207.96 of goods and materials provided to Defendant on credit and $9,276.59 of pre-judgment interest. *See* Mot. ¶ 10 - 12.

D. **Attorney's Fees and Costs**

"In Virginia, counsel must 'establish, as an element of the attorney's prima facie case, that the fees charged . . . are reasonable.'" *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 300 (4th Cir. 2003) (quoting *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd.*, 253 Va. 93, 480 S.E. 2d 471, 473 (Va. 1997)). "'[T]he fact finder should consider such circumstances as the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances.'"

*Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 403 S.E. 2d 334, 335, 7 Va. Law Rep. 2282 (Va. 1991). While expert testimony regarding the reasonableness of the fees is not required in every case, *see Tazewell Oil Co. v. United Va. Bank*, 243 Va. 94, 413 S.E. 2d 611 (Va. 1992) (holding affidavit and billing records sufficient), the Court can request expert testimony to better inform its review of Plaintiff's requested damages.

Plaintiff seeks $6,665.67 in attorney fees. Mot. ¶ 10. In support of the motion, Plaintiff provides the Declaration of L&W's Attorney Thomas J. Moran ("Mr. Moran"). *Id.* at Ex. 1 ("T. Moran Decl."), ECF No. 12-1. Mr. Moran is a partner at Wright, Constable & Skeen ("WCS"), a Virginia law firm, who has practiced suretyship, construction law, and commercial litigation in Richmond, Virginia since 2005. T. Moran Decl. ¶ 2-3. Mr. Moran's Declaration attests to the time and labor he expended to address questions of moderate complexity in the instant litigation, as well as his hourly rate of $225, which is well below the prevailing market rate for law firm partners who perform similar legal services for clients in the construction industry. *Id.* ¶¶ 9, 12.

Mr. Moran's Declaration attaches WCS invoices for L&W's legal fees in this matter. The WCS invoices provide an account of the legal services Mr. Moran personally performed on behalf of L&W in this matter, including the hours he expended, and amounts billed to Plaintiff. *Id.* at Ex. A. The WCS invoices also include a summary of the legal work performed by two WCS paralegals, Beth Fizer and Sharon Phillips, and accounts for the additional costs and expenses incurred in this matter. *Id.* Mr. Moran's Declaration summarizes each paralegal's experience, professional background and education, and paralegal work performed in the instant action. T. Moran Decl. ¶ 12-13. Based on the paralegals' experience, and Mr. Moran's experience as the supervising attorney on this case, Mr. Moran asserts that the hourly rates and billable paralegal work sought in this case are reasonable and consistent with the amount of fees incurred in similar cases. *Id.*

Having reviewed the time entries and records submitted, the Court finds that Mr. Moran's rate and expended hours are reasonable and well-supported. After considering the *Johnson* factors,

the Court calculated the lodestar award by multiplying a total number of 26.2 hours expended by Mr. Moran at an hourly rate of $225, totaling $5,895 in legal fees. In addition, the Court calculated the $115 lodestar award for the paralegals who rendered legal services in this case by multiplying 0.30 hours expended by Beth Fizer at an hourly rate of $100, totaling $30.00, and by multiplying 0.50 hours expended by Sharon Phillips at an hourly rate of $170.00, totaling $85.00. The Court also finds that an additional $655.67 in related costs and expenses were incurred by Plaintiff. Accordingly, Plaintiff's motion for attorney's fees and costs will be granted for the total amount of $6,665.67, which includes $6,010.00 in legal fees and $665.67 in related costs and expenses.

E.   **Post-Judgment Interest**

Finally, Plaintiff moves for an entry of post-judgment interest in addition to the requested damages. *See* Mot. at 3. Under the post-judgment statute, post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961 (2000). Section 1961 provides further that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.* The Supreme Court held that "[t]he purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (internal quotations and citation omitted). The Fourth Circuit has held that "awarding post-judgment interest on the entire [damages] amount . . . including pre-judgment interest, most closely comports with the purpose of post-judgment interest articulated by the Supreme Court." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (citing *Bonjorno*, 494 U.S. at 835). Further, post-judgment interest on a money judgment begins to accrue "from the date the judgment is entered until payment is made in full at the federal rate of interest as calculated using the formula set forth in 28 U.S.C. § 1961." *Brinn v. Tidewater Transp. Dist. Comm'n*,

113 F.Supp.2d 935, 939 (E.D. Va. 2000) (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999)).

The Court finds that Plaintiff is entitled to post-judgment interest, calculated in the manner set forth in 28 U.S.C. § 1961(a), "to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Bonjorno*, 494 U.S. at 835–36 (internal quotations and citation omitted).

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Default Judgement, ECF No. 12, is **GRANTED**. The Court **ENTERS** default judgment against Defendant Driven Construction, Inc. Plaintiff is **AWARDED** $145,484.55 in damages to be recovered from Defendant and Plaintiff's request for $9,276.59 in pre-judgment interest is **GRANTED**. Moreover, the request for post-judgment interest is **GRANTED**. Finally, Plaintiff's request for reasonable attorney's fees is **GRANTED** in the amount of $6,665.67.

Defendant is **ORDERED** to pay Plaintiff a final judgment of **$152,150.22** within **SIXTY (60) DAYS** of the date of this Order. All pre-judgment and post-judgment interest shall be paid at the prevailing interest rate calculated from the date of the entry of this Order. The Court shall retain jurisdiction for enforcement of its Order. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and all parties of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
April /2 , 2023

Raymond A. Jackson
United States District Judge